UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO. 12-CV-60706-MIDDLEBROOKS/BRANNON

APOTEX, INC., et al.

        Plaintiffs,
v.

UCB, INC., et al.,
        Defendants.
_____/

**PLAINTIFFS' REPLY BRIEF IN SUPPORT OF ITS MOTION TO
EXCLUDE CERTAIN TESTIMONY AND OPINIONS OF UCB'S EXPERTS (D.E. 147)**

Plaintiffs Apotex Inc. and Apotex Corp. (collectively "Apotex") submit this reply brief in response to Defendants UCB, Inc.'s and Kremers Urban Pharmaceuticals, Inc.'s (collectively, "UCB") Opposition Brief (D.E. 159) and in further support of Apotex's Motion to Exclude Certain Testimony and Opinions of UCB's Experts (D.E. 147) pursuant to Fed. R. Evid. 702 and 403, as well as Fed. R. Civ. P. 26(e) and 37(c)(1).

## I. INTRODUCTION

Apotex has demonstrated that UCB's "expert" Dr. Chyall is not qualified in the art most relevant to the asserted claims of the '556 patent – methods of making drug products (i.e. pharmaceutical formulation), including wet granulation. D.E. 147 at 1, 6-9. Notably absent from UCB's response is any attempt to say that Dr. Chyall is so qualified. UCB's silence on this issue is an implicit concession that Dr. Chyall is not an expert in these fields. This is sufficient grounds to exclude Dr. Chyall from testifying on invalidity, claim construction and damages as "it is an abuse of discretion to permit a witness to testify as an expert on the issue[] of invalidity unless that witness is qualified in the pertinent art." *Sundance, Inc. v. DeMonte Fabricating Ltd.*, 550 F.3d 1356, 1363 (Fed. Cir. 2008). UCB tries to downplay this directive from the Federal Circuit (D.E. 159 at 6) by characterizing it as a decision about a patent law expert with no technical expertise. However, the holding in *Sundance* was not so limited. Further, UCB's argument has been rejected by multiple district courts, as described in Apotex's opening brief (D.E. 147 at 2, 4, 8, 9). In fact, this Court applied the same principle in a case decided prior to *Sundance*. *See White Water Investments, Inc. v. Ethicon Endo-Surgery, Inc.*, No. 04-81178-CIV, 2005 WL 5955023, *2 (S. D.

Fla. Sept. 15, 2005) ("While Dr. Whitworth may be eminently qualified to testify as to how biopsy devices are used in practice, his experience does not indicate any particular expertise in explaining patent construction or determining anticipation."). Unsurprisingly, UCB chooses to ignore this precedent in its response. In addition, allowing Dr. Chyall's unqualified "expert" testimony would not help, but would likely confuse or mislead, the trier of fact on the invalidity, claim construction, damages, and inequitable conduct issues because he cannot give an opinion from the proper perspective of a person of even ordinary skill in the art in April 2000. This provides an additional basis for excluding Dr. Chyall's testimony on these subjects.

UCB's attempts to save Dr. Chyall's ability to testify by mischaracterizing the '556 patent as being solely about an acid-base chemical reaction. However, UCB's post-hoc attempt to shift the focus of this case away from methods of making drug products (i.e. pharmaceutical formulation), including wet granulation is belied by, *inter alia*, Dr. Chyall's reports. For example, Dr. Chyall dedicates an entire section of his opening report to discussing wet granulation. *Id.* at ¶¶ 40-46. Dr. Chyall opines on passages from the prior art concerning wet granulation for his invalidity opinions. *See, e.g., id.* at ¶ 71 ("Wet granulation also requires use of a sufficient amount of solvent to achieve a wet mass, and it requires a certain amount of time to properly mix the ingredients and then dry the wet mass. (*See* Section IV, *supra*.)"); ¶¶ 83-84. Thus, Dr. Chyall's own opinions clearly demonstrate the relevance of wet granulation to the '556 patent. The Court should exclude Dr. Chyall from testifying about the opinions in his reports that relate to wet granulation and making drug products, which Dr. Chyall is admittedly not qualified to provide, as opposed to organic or analytical chemistry.

Further, accepting UCB's argument would require this Court to determine that the inventor, Dr. Sherman, was not a person of ordinary skill in the art because Dr. Sherman is not a chemist, but a formulator. D.E. 146, Ex. G, Sherman Dep. at 10:8-14; 30:25.[1] Doing so would be contrary to black-letter law stating inventors are at least a person of ordinary skill. *See, e.g.*, *Phillips v. AWH Corp.*, 415 F.3d 1303, 1313 (Fed. Cir. 2005) (en banc) ("well-settled understanding that inventors are typically persons skilled in the field of the invention"); *CCS Fitness, Inc. v. Brunswick Corp.*, 288 F.3d 1359, 1368 (Fed. Cir. 2002) (explaining that the inventor is "presumably also an artisan of

---

[1] To avoid unnecessarily duplicative filings, Apotex refers the Court to Exhibit G filed concurrently with its Claim Construction brief (D.E. 146), filed under seal on May 24, 2013. Otherwise, Apotex's citation to Exhibits A-H herein refer to the exhibits filed with its opening brief (D.E. 147) on May 24, 2013.

ordinary skill in the art" for purposes of comparing expert testimony). Thus, the most pertinent art for the '556 patent is pharmaceutical formulation, including wet granulation.[2]

Dr. Chyall should also be precluded from giving a damages opinion. His one paragraph opinion in his report pales in comparison to the two and half page explanation that UCB puts forth in its brief. However, even if Dr. Chyall explained as much in his report as UCB does now, he should still not be allowed to testify on this topic for two reasons. First, Dr. Chyall is not qualified in pharmaceutical formulations or wet granulation as described above. Second, Dr. Chyall admitted that his guesses at the time and money it would cost to switch did not include time for the FDA to approve the change, despite admitting that FDA approval may be necessary. Once again, UCB fails to address this fact despite it being raised by Apotex (D.E. 147 at 12). As such, Dr. Chyall's testimony on damages should be excluded. Likewise, the opinions of UCB's damages expert, Dr. Tyler, that rely on Dr. Chyall's unsupported and unscientific speculation should also be excluded.

In addition, Dr. Chyall should not be allowed to opine on whether the USPTO would find something material for patentability. Apotex demonstrated Dr. Chyall has no relevant experience to give such opinions. D.E. 147 at 13-14. UCB does not argue otherwise. In fact, UCB has moved to exclude the former head of the USPTO, Apotex's expert Mr. Nicholas Godici, from opining on the materiality of the same evidence. *See* D.E. 151. Clearly, if someone as qualified as Mr. Godici cannot testify as to whether the PTO would allow a patent to issue over the 2001 Study, then someone vastly less qualified in PTO practice and procedure and the relevant art like Dr. Chyall should also be precluded.

Finally, UCB does not contest that Dr. Chyall has failed to give opinions on many of UCB's late-arising arguments on non-infringement, invalidity, inequitable conduct, and claim construction. UCB did not oppose Apotex's argument that Dr. Chyall should be excluded from testifying at trial on any of these issues except for claim construction, stating he should be allowed to testify if the Court would find it helpful to hear his testimony. However, this proposal is in clear contradiction to Federal Rule of Civil Procedure 26(a) and should Dr. Chyall should be precluded from doing so under Rule 37(c)(1).

---

[2] Even if UCB is correct that the '556 patent is <u>solely</u> about an chemistry (which it is not), the Court should exclude Dr. Chyall from testifying about the opinions in his reports that relate to wet granulation and making drug products, which Dr. Chyall is admittedly not qualified to provide. See Paragraphs 31-46, 56, 60-64, 71-72, 79-89, 92-93, 103, 108-112 in his opening report (Ex. B), Paragraphs 7-13 in his supplemental report (Ex. E), and Paragraphs 13-26, 33-35, and 37-38 in his rebuttal report (Ex. F).

## II. UCB HAS NOT SHOWN THAT DR. CHYALL IS QUALIFIED TO OPINE ON PHARMACEUTICAL FORMULATION AND WET GRANULATION

UCB bears the burden of demonstrating that Dr. Chyall is qualified to provide expert opinions in this case. *United States v. Frazier,* 387 F.3d 1244, 1260 (11th Cir. 2004) ("The burden of establishing qualification, reliability, and helpfulness rests on the proponent of the expert opinion.")). UCB does not come close to meeting this burden.

### A. PHARMACEUTICAL FORMULATION, NOT CHEMISTRY, IS THE MOST PERTINENT ART TO THE ASSERTED CLAIMS OF THE '556 PATENT.

Dr. Chyall's opening expert report belies UCB's attempt to marginalize the role of wet granulation in this case. UCB now claims: the '556 patent is "all about an acid-base chemical reaction" (D.E. 159 at 1), "[t]he pertinent art here is organic and pharmaceutical chemistry" (*id.* at 2), and "the issues in this case are about chemistry" (*id.* at 3). If any of that were true, however, then Dr. Chyall's extensive discussion of wet granulation throughout his reports would not only be unreliable, but also irrelevant.

UCB also incorrectly argues that the '556 patent is not about wet granulation because the specification does not provide more than a mention of wet granulation. D.E. 159 at 4-5. It is well settled law that a patent need be "only so specific as to lead one having ordinary skill in the art" to the claimed invention. *In re Herschler*, 591 F.2d 693, 702 (C.C.P.A. 1979). Here, the '556 patent disclosure speaks to the person of ordinary skill in the art of formulation, including wet granulation. It does not need to spell out details of the invention that would be known to the POSA. *See In re Alonso*, 545 F.3d 1015, 1019 (Fed. Cir. 2008). The general detail about wet granulation in the '556 patent makes sense because the inventor and drafter of the specification, Dr. Sherman, is a formulator, not a chemist. D.E. 146, Ex G., Sherman Dep. at 12:16-13:9. Thus, the supposed "lack of specific details" is of no moment because such a ordinarily skilled formulator would have familiarity with general wet granulation principles and understand the invention. Ex. C, Cima Reb. Rept. at ¶¶ 125-143; Ex. D, Moreton Reb. Rept. at ¶¶ 72-117.

The reason Dr. Chyall (and consequently UCB) struggles with this "lack" of disclosure is because he is not even an ordinarily skilled formulator. In contrast, no one with experience in pharmaceutical formulation who reviewed this patent has had difficulty understanding the terms or appreciating the novelty of the inventions, including Dr. Sherman, the declarant Dr. Lipp, the USPTO examiners who reviewed and allowed the application, and Apotex's two expert witnesses,

Drs. Cima and Moreton. Dr. Chyall's inability to understand the invention is a reflection of lack of knowledge and experience (i.e. qualifications), not a deficiency with the '556 patent.

Despite this lack of understanding, Dr. Chyall opines that "the wet granulation process used to make Univasc® and Uniretic® tablets was a commonly used and well known method of making pharmaceutical tablets that was publicly available and known to persons of ordinary skill in the art at least as early as 1998." Ex. B, Chyall Op. Rept. , ¶ 34. Dr. Chyall discusses wet granulation "in further detail" in his report as well. *See id.* at ¶¶ 40-46. Dr. Chyall then relies on wet granulation—and the understanding of wet granulation that a person of ordinary skill in the art would have had—to render opinions on the validity of the '556 patent. For example, Dr. Chyall's opinion on anticipation is based in part on a person of ordinary skill in the art's understanding that "wet granulation meets each of these claim elements." *Id.* at ¶ 71. Dr. Chyall's obviousness opinion further illustrates Dr. Chyall's reliance on wet granulation as he opines that a reference that teaches wet granulation would have motivated a person of ordinary skill in the art to do what is claimed in claim 1 of the '556 patent. *Id.* at ¶ 83. Therefore, UCB's post-hoc attempt to change the relevant art to chemistry is belied by its own expert report.

      **B.**    **D<small>R</small>. C<small>HYALL</small> S<small>HOULD</small> B<small>E</small> P<small>RECLUDED FROM</small> O<small>PINING ON</small> I<small>NVALIDITY AND</small> C<small>LAIM</small> C<small>ONSTRUCTION BECAUSE</small> H<small>E IS NOT</small> Q<small>UALIFIED TO</small> G<small>IVE</small> O<small>PINIONS ON</small> P<small>HARMACEUTICAL</small> F<small>ORMULATION</small>, I<small>NCLUDING</small> W<small>ET</small> G<small>RANULATION</small>.**

Dr. Chyall is not qualified to render opinions as to what a person having ordinary skill in the art in wet granulation techniques, (i.e. a pharmaceutical formulator) would have known. He is an analytical and organic chemist—not a pharmaceutical formulator. UCB does not explain how Dr. Chyall's knowledge, skill, experience, training, or education as a chemist extends to pharmaceutical formulation, which is a different discipline. Instead, UCB tries to use Dr. Chyall's experience characterizing and analyzing already formulated pharmaceuticals as a substitute for experience formulating pharmaceuticals. *Compare* D.E. 159 at 4 ("Dr. Chyall, a Ph.D. chemist with twelve years of pharmaceutical experience and nearly 30 years of experience in chemistry") *with* Chyall Dep. at 75:4-76:9 (testimony concerning the one time Dr. Chyall has ever observed a wet granulation being run). Analyzing something and making something, however, are two different things. This is why Apotex did not challenge Dr. Chyall's credentials to testify about the analytical chemistry techniques used to establish infringement, which are in line with his education and experience. However, this does not mean Dr. Chyall has free reign to testify about the other aspects

of the patent that he is not an expert or ordinarily skilled in, such as what a person having ordinary skill in pharmaceutical formulation would have known at the time of the invention.[3]

Yet, according to UCB, "Dr. Chyall does not need extensive experience, if any, performing wet granulation in order to opine on invalidity." D.E. 159 at 5. That simply is not true because Dr. Chyall's invalidity opinions rely on wet granulation as discussed above. As another example, Dr. Chyall states "[t]he wet granulation method that UCB uses to manufacture Univasc® products was a well-known and preferred method for preparing pharmaceutical tablets as of the '556 patent application." Ex. A at ¶ 110. There is no basis for such opinions by Dr. Chyall because he has no knowledge, skill, experience, training, or education in the preparation of pharmaceutical tablets—and UCB does not contend otherwise. If he is to opine on wet granulation as an expert, then Dr. Chyall must qualify as an expert in wet granulation. *See, e.g.*, *Sundance*, 550 F.3d at 1363; *White Water*, 2005 WL 5955023 at *2. But because Dr. Chyall lacks the necessary qualifications, he cannot.

C. **DR. CHYALL'S EXPERIENCE IN ORGANIC AND ANALYTICAL CHEMISTRY DOES NOT QUALIFY HIM TO TESTIFY ON PHARMACEUTICAL FORMULATION, INCLUDING WET GRANULATION BECAUSE THEY ARE NOT RELATED APPLICATIONS.**

Methods of making drug tablets and organic or analytical chemistry are not "related applications" within the meaning of the cases cited by UCB. *See* D.E. 159 at 5. In these cases, experts having experience in a general field were allowed to testify about specific areas within that field even though the experts did not specialize in those specific areas. Each of them allowed experts to testify "about related applications," but not wholly distinct fields. For instance, in *Thompson v. Tricam Indus., Inc.*, the court allowed an engineer to testify about the design of a ladder based on the engineer's application of "the physics and forces involved in causing the ladder to fail, ANSI Standards, and his own documented examination." No. 2:06-cv-56-FtM-26DNF, 2007 WL 4800354, *2 (M. D. Fla. Nov. 30, 2007). Similarly, in *Tesco Corp. v. Weatherford Int'l*, the court allowed an engineer to testify about the design and use of pipe handling devices even though the engineer had not studied or worked with pipe handling devices previously. 750 F. Supp. 2d 780,

---

[3] Contrary to UCB's contention (D.E. 159 at 3), Apotex did not concede that Dr. Chyall could discuss all aspects of infringement. Instead, Apotex is not challenging Dr. Chyall's qualifications to testify on the limited issue of whether the analytical chemical tests relied on by Apotex's experts are sufficient to show infringement of the 80% conversion limitation. In other words, Apotex does not challenge Dr. Chyall's qualifications in analytical chemistry. UCB's misuse of an inapt patent law maxim does not change the fact that Dr. Chyall is not an expert in wet granulation or formulation.

796 (S. D. Tex. 2010).[4]  In both cases, the experts used the engineering principles they learned through education and experience to address whether the products at issue had been engineered properly.  In other words, the "related application" was in their general field.  This is akin to asking an organic chemist to opine on analytical chemistry or a pharmaceutical formulator who specializes in tablets to opine on capsules. That is not what UCB is doing here.

        **D.**      **DR. CHYALL SHOULD NOT BE ALLOWED TO OPINE BEYOND HIS EXPERTISE AND CONFUSE THE ISSUES OR MISLEAD THE JURY OR THIS COURT WITH HIS TESTIMONY.**

UCB has exceeded the expertise of Dr. Chyall, an analytical and organic chemist, by making him offer opinions on wet granulation, which is not a technique used within his field. Dr. Chyall has <u>never</u> developed a method of making a drug that uses wet granulation, despite his training in organic chemistry.  Ex. A, Chyall Dep. at 76:5-9.  In fact, he has never actually run a wet granulation of any sort.  *Id.* at 75:4-6.  Dr. Chyall's own testimony reveals that his only actual experience with wet granulation took place while he toured a laboratory facility seven or eight years after the relevant time period.  *Id.* at 74:12-76:9.  Dr. Chyall's opinions concerning wet granulation require scientific knowledge concerning pharmaceutical formulation that he frankly does not have.[5] *See Sundance,* 550 F.3d at 1362;[6] *White Water*, 2005 WL 5955023 at *2 ("While Dr. Whitworth may be eminently qualified to testify as to how biopsy devices are used in practice, his experience does not indicate any particular expertise in explaining patent construction or determining anticipation."); *DiViero v. Uniroyal Goodrich Tire Co.*, 919 F. Supp. 1353, 1357 (D. Ariz. 1996) ("If … scientific knowledge is necessary the expertise must be coextensive with the particular scientific discipline.").  Dr. Chyall's lack of education or experience as a pharmaceutical formulator during the relevant period means that he cannot opine as to what a person of ordinary skill in the art

---

[4] *Lavespere* is also inapt because there the expert had designed mechanical devices similar to the patented press brake and had been qualified by other courts to testify on design of devices similar to press brakes.  910 F.2d 167, 176 (5th Cir. 1990), *abrogated on other grounds by Little v. Liquid Air Corp.*, 37 F.3d 1069 (5th Cir. 1994).   Here, Dr. Chyall has never designed or been involved with methods of making pharmaceuticals or doing any chemical reactions during wet granulation. Ex. A, Chyall Dep. at 74:12-76:9.  Also, Apotex is unaware of (and UCB has not suggested) that Dr. Chyall has been accepted by any court as an expert in pharmaceutical manufacturing methods or wet granulation.

[5] UCB's citation (D.E. 159 at 5) to Dr. Sherman's testimony that selecting the variables for the wet granulation is "not difficult" to a person of ordinary skill is misleading because he was not referring to a chemist (as UCB's citation would imply).  Rather, Dr. Sherman considered a person of ordinary skill to be a formulator, not a chemist.  *See, e.g.*, D.E. 146, Ex. G., Sherman Dep. at 86:3-8.

[6] The dicta in *Sundance* cited by UCB (D.E. 159 t 6) supports Apotex's motion and would be relevant only if Apotex was seeking to exclude Dr. Chyall's opinions on the analytical tests Apotex relies on for infringement (which it is not).

7

would have known about wet granulation at that time. *See McLendon v. Kaolin Co., Inc.*, 841 F. Supp. 415, 418 (M. D. Ga. 1994) ("Because the transaction occurred in the late 60's and early 70's, the expert must be knowledgeable as to the commercial practices and market value of kaolin at that time in order to assist the trier of fact.").

Apotex demonstrated that allowing Dr. Chyall's testimony would likely confuse issues, mislead the jury and prejudice Apotex. *See* D.E. 147 at 11. Contrary to UCB's argument (D.E. 159 at 6), Apotex did identify why Dr. Chyall's testimony would be imprecise: Dr. Chyall's lack of experience and training preclude him from being able to precisely and accurately opine on what a POSA would know or understand in April 2000. More simply put, Dr. Chyall does not know what a POSA knew or understand in April 2000 and therefore his speculative opinions on that topic are unreliably imprecise. Dr. Chyall's testimony on what he thinks a formulator did or did not know is potentially misleading because "expert testimony may be assigned talismanic significance in the eyes of lay jurors." *Frazier*, 387 F.3d at 1266.

Therefore, as in *White Water*, this Court should again exclude an expert's testimony on areas outside his area of expertise and prevent Dr. Chyall from testifying about claim construction, invalidity, damages, and inequitable conduct issues that rely on pharmaceutical formulation and wet granulation under Fed. R. Evid. 702 and/or 403.

### III. UCB'S COUNSEL CANNOT NOW PROVIDE THE FACTUAL BASIS FOR DR. CHYALL'S UNSUPPORTED SPECULATION ON DAMAGES.

It took UCB nearly two pages to explain the purported factual basis for Dr. Chyall's one paragraph opinion concerning the time and costs associated with a purported alternate manufacturing process. *Compare* D.E. 159 at 6-9 *with* Ex. F, Chyall Reb. Rept. at ¶ 35. In their defense of Dr. Chyall's conclusory opinion, UCB only cites to Dr. Chyall's report once. This happened because Dr. Chyall did not even attempt to tie his opinion to any existing data or explain the factual basis for his opinion. Aside from a series of assumptions concerning the '556 patent, UCB's process, and the '450 patent (which Apotex does not necessarily agree with), Dr. Chyall's only paragraph in his reports that addresses his alternate process opinion does not contain any citation to evidence. Ex. F at ¶ 35. Thus, his opinion is unsupported, unscientific speculation as to how long it would take and how much it would cost to switch processes. Absent support, Dr. Chyall's reports do not contain a complete statement of all of his opinions and there is no indication that Dr. Chyall's alternate process opinion is reliable. Fed. R. Civ. P. 26(a)(2)(B)(1).

Even if UCB's brief is accepted as Dr. Chyall's opinion, he should still not be allowed to testify on this topic for two reasons. First, Dr. Chyall is not qualified in pharmaceutical formulations or wet granulation as described above. Second, Dr. Chyall admitted that his guesses at the time and money it would cost to switch did not include time for the FDA to approve the change, despite admitting that FDA approval may be necessary. Ex. A, Chyall Dep. at 295:15-296:23.

Therefore, Dr. Chyall should not be permitted to speculate on an alternate process and Dr. Tyler should not be permitted to offer any opinions that rely on Dr. Chyall's alternate process opinion.

## IV.  DR. CHYALL SHOULD NOT BE ALLOWED TO USURP THE FACT FINDER ON MATERIALITY.

Dr. Chyall's report speaks to what a patent examiner would have done. Ex. B, Chyall Op. Rept. at ¶ 67. In its opposition, UCB attempts to recast Dr. Chyall's opinions as limited to chemistry, but Dr. Chyall did not stop there. D.E. 159 at 9. Dr. Chyall goes beyond the science involved and opines on the materiality of the 2001 Study. Ex. A at ¶ 67. ("the claims in the '556 patent would not have been allowed had the Examiner been presented with the information provided in the 2001 study."). This "invades the provinces of the judge and jury; and goes beyond [the expert's] expertise, which does not extend to PTO processes and procedures." *See Island Intellectual Property LLC v. Deutsche Bank AG*, No. 09 Civ. 2675(KBF), 2012 WL 526722 (S.D.N.Y. Feb. 14, 2012). Thus, Dr. Chyall should not be allowed to testify about what the examiner would or would not have done.

## V.  DR. CHYALL SHOULD NOT BE ALLOWED TO TESTIFY ABOUT UCB'S LATE ARISING ARGUMENTS THAT WERE NEVER PREVIOUSLY DISCLOSED.

As set forth in its opening brief, Apotex seeks to preclude Dr. Chyall from testifying about issues that he has not addressed to date in his reports or otherwise under Federal Rules of Civil Procedure 26(a)(2)(B)(1) and 37(c)(1), not Fed. R. Evid. 702. D.E. 147 at 14-17. Apotex has been forced to make this motion by UCB's continued disregard for discovery deadlines and its penchant for adding new defenses that Dr. Chyall never opined on. In its opposition, UCB does not even dispute that Dr. Chyall should not be able to opine on Dr. Sherman's enalapril patents or the *Apotex v. Merck* litigation involving these patents. Also, UCB does not contest that Dr. Chyall should not be able to opine on its new non-infringement and invalidity positions presented in the April 2013 pre-trial stipulation. Thus, Apotex's motion should be granted on at least these grounds.

Further, UCB admits that Dr. Chyall has yet to opine on the claim construction issues that it raised after the close of discovery. UCB contends that "he should be permitted to testify as to those opinions" if the Court thinks it will assist in construing the claims. D.E. 159 at 10.[7] However, this approach is not in compliance with Federal Rules, which requires experts to provide "a complete statement of all opinions the witness will express and the basis and reasons for them" at least 90 days before the trial date. Fed. R. Civ. P. 26(a)(2)(B)(1) and 26(a)(2)(D). UCB's time to seek expert testimony has passed and UCB should be forced to live with their failure to adduce expert testimony on these claim construction issues.

## VI.    CONCLUSION

For the foregoing reasons and those stated in Apotex's Opening Brief (D.E. 147), this Court should not permit Dr. Chyall to testify about (1) the invalidity or claim construction of the '556 patent, (2) the development and cost of an alternative non-infringing manufacturing process, (3) what a USPTO examiner would have done if presented with certain information, and (4) opinions outside his reports or deposition, including inequitable conduct, claim construction, non-infringement and invalidity arguments raised by UCB, under Fed. R. Evid. 702 and *Daubert*, Fed. R. Evid. 403, and/or Fed. R. Civ. P. 37(c)(1).

---

[7] UCB's contention (D.E. 159 at 10) that these claim construction positions are timely or not prejudicial is wrong. Apotex's proposal for tabling claim construction issues was based on the positions that the parties had set forth to date. UCB cannot seriously contend that the Court's order was intended to allow previously undisclosed positions to be brought to light well after discovery had closed because that violates the letter and the purpose of the Federal Rules.

Dated: June 17, 2013	Respectfully submitted,

  /s/ Brian J. Sodikoff
Matthew S. Nelles
Fla. Bar. No. 009245
mnelles@broadandcassel.com
Broad and Cassel
One Financial Plaza
100 S.E. Third Avenue, Suite 2700
Fort Lauderdale, Florida  33394
Telephone: (954) 764–7060
Facsimile:  (954) 761–8135

KATTEN MUCHIN ROSENMAN LLP
Robert B. Breisblatt (Fla. Bar No. 145928)
robert.breisblatt@kattenlaw.com
Brian J. Sodikoff (admitted *pro hac vice*)
brian.sodikoff@kattenlaw.com
Martin S. Masar III (admitted *pro hac vice*)
martin.masar@kattenlaw.com
Elese E. Hanson (admitted *pro hac vice*)
elese.hanson@kattenlaw.com
525 W. Monroe Street
Chicago, Illinois  60607
Telephone: (312) 902-5200
Facsimile:  (312)-902-1061

*Attorneys for Plaintiffs Apotex, Inc. and Apotex Corp.*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that, on this 17th day of June 2013, I electronically filed the foregoing PLAINTIFFS' REPLY BRIEF IN SUPPORT OF ITS MOTION TO EXCLUDE CERTAIN TESTIMONY AND OPINIONS OF UCB'S EXPERTS (D.E. 147) using CM/ECF.  I also certify the foregoing document is being served this day on all counsel of record on the attached service list via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.
.

   /s/ Robert B. Breisblatt   
Robert B. Breisblatt

## SERVICE LIST

Maria J. Beguiristain
White & Case LLP
Southeast Financial Center
200 South Biscayne Boulevard, Suite 4900
Miami, Florida  33131
Telephone: (305) 371-2700
Facsimile:  (305) 358-5744
mbeguiristain@whitecase.com

*Attorneys for Defendants*
*UCB, Inc. and Kremers*
*Urban Pharmaceuticals, Inc.*

Dimitrios T. Drivas (*pro hac vice*)
Adam Gahtan (*pro hac vice*)
Amit H. Thakore (*pro hac vice*)
White & Case LLP
1155 Avenue of the Americas
New York, New York  10036
Telephone: (212) 819-8200
Facsimile:  (212) 354-8113
ddrivas@whitecase.com
agahtan@whitecase.com
athakore@whitecase.com

*Attorneys for Defendants*
*UCB, Inc. and Kremers*
*Urban Pharmaceuticals, Inc.*