# **EXHIBIT C**

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

CASE NO. 12-60706-CIV-MIDDLEBROOKS/BRANNON (CONSOLIDATED)

| | |
|---|---|
| APOTEX, INC. and APOTEX CORP.,<br><br>　　　　　Plaintiffs,<br><br>　　v.<br><br>UCB, INC. and KREMERS URBAN<br>PHARMACEUTICALS INC.,<br><br>　　　　　Defendants. | C.A. No. 12-60706 (DMM)<br><br>**HIGHLY CONFIDENTIAL –<br>ATTORNEYS' EYES ONLY** |

**OPENING EXPERT REPORT OF LEONARD J. CHYALL, PH.D.**

claim 11 would have been obvious in view of the prior art for the same reasons as described above with respect to claim 1.

89.    Claim 12 depends from any of claims 1-8 and further requires that the percentage of moexipril or acid addition salt thereof converted to moexipril magnesium is greater than 90%. Therefore, claim 12 would have been obvious over the prior art for the same reasons as described with respect to claim 1.

## X.   THE CLAIMS ARE INVALID AS INDEFINITE

90.    It is my understanding that pursuant to 35 U.S.C. § 112, ¶ 2, the claims of a patent must particularly point out and distinctly claim the subject matter that the inventor regards as his invention. The claim terms must be sufficiently definite to inform the public of the bounds of the claimed invention, and to clearly distinguish what is claimed from what came before in the art.

91.    The process of claim 1 of the '556 patent comprises "the step of reacting moexipril or an acid addition salt thereof with an alkaline magnesium compound in a controlled manner in the presence of a sufficient amount of solvent for a predetermined amount of time so at to convert greater than 80% of the moexipril or moexipril acid addition salt to moexipril magnesium." (*See* ¶ 51, *supra*.)

92.    On its face, the claim term "controlled manner" is ambiguous. Additionally, there is no information or guidance in the specification of the '556 patent or the file history concerning the meaning of the claim term "controlled manner." For example, the specification does not describe why it is "difficult to control the process [disclosed in '450 patent] so as to completely avoid an acid-base reaction in the making of the composition," ('556 patent, col. 2, ll. 35-38), nor does it describe any manner of control that improves on prior art processes. Therefore, the '556 patent does not provide any guidance to a skilled artisan concerning how infringement of claim 1

32

could be avoided by performing the process in a manner that is not "controlled" within the meaning of the claims.

93.  Similarly, the claim terms "sufficient amount of solvent" and "predetermined amount of time" are ambiguous, and neither the '556 patent specification nor the file history offers sufficient guidance as to their meaning. For example, the '556 patent specification and claims do not disclose the minimum amount of solvent that must be used to practice the claimed process. Moreover, Dr. Sherman testified that various amounts water may be used to achieve the claimed reaction but could not identify what a "sufficient amount" would be. (*See, e.g.*, Sherman Dep. 69:14-71:5; 78:15-79:3; 81:7-19; 84:16-86:2.) Nor is there any information concerning the amount of time necessary to achieve the invention. Dr. Sherman testified that a "wide range" of parameters, including the amount of time that is allowed for the reaction to occur, would be "sufficient" to perform claimed invention and that "there's no exact line in between." (Sherman Dep. 66:18-67:16.) In fact, Dr. Sherman testified that the '556 patent does not contain guidance with respect to these various parameters, "many of which are arbitrary." (Sherman Dep. 130:13-131:1.) Accordingly, it is my opinion that a POSA would not be able to determine the precise scope of the claimed invention or how to avoid infringement.

94.  There is also no guidance in the '556 specification and the file history regarding the claim term "so as to convert greater than 80% of the moexipril or moexipril acid addition salt to moexipril magnesium." The specification and claims of the '556 patent do not teach how to measure or calculate whether there has been conversion of "greater than 80%." Dr. Sherman admitted that neither the claims nor the specification "disclose[d] any analytical method for determining whether you have a greater than 80 percent conversion." (Sherman Dep. 101:14-104:4.) Additionally, Dr. Sherman testified that he could not answer what kind of tests would be

used to measure for 80% conversion, that he had not conducted tests to measure whether his process results in 80% conversion, and that he had not witnessed others conduct such tests. (*See, e.g.,* Sherman Dep. 92:25-93:15.) Dr. Sherman further explained that he was not "trying to teach people how to decipher whether or not they're infringing or not infringing." (Sherman Dep. 102:18-103:3.) While that may be true, it is my understanding that neither the claims, nor the specification, nor the prosecution history of the '556 patent indicate any method of determining whether the 80% conversion limitation is met. Moreover, a POSA would not know how to quantitatively determine the amount of moexipril magnesium in the formulation. I am not aware of any published methods for quantitatively determining the amount of moexipril magnesium in a formulation.

95.  Therefore, it is my opinion that the claims of the '556 patent do not particularly point out and distinctly claim the invention such that a person skilled in the art would understand the scope of the claimed invention in view of the specification and file history.

## XI. THE CLAIMS ARE INVALID FOR LACK OF ADEQUATE DISCLOSURE

96.  It is my understanding that a patented invention is invalid if the specification does not contain a written description of the invention, and of the manner and process for making and using it, in such full, clear, concise, and exact terms as to enable any person skilled in the art to which it pertains, or with which it is most nearly connected, to make and use the same. 35 U.S.C. § 112, ¶ 1.

97.  It is my understanding that the written description requirement of 35 U.S.C. § 112, ¶ 1 requires that the specification of the patent describe the claimed invention in sufficient detail such that one skilled in the art can reasonably conclude that the inventor was in possession of the invention.

I reserve the right to revise or supplement my opinions as additional information becomes available. Exhibits to be used in support of the opinions stated in this report include all of the tables, graphics and information contained herein as well as the materials cited in or accompanying this report. Additional demonstrative exhibits may be prepared for trial and used to support my opinions.

Respectfully submitted,

Dated: February 4, 2013

Leonard J. Chyall
Leonard J. Chyall, Ph.D.