UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO. 12-CV-60706-MIDDLEBROOKS/BRANNON

APOTEX, INC., et al.

    Plaintiffs,

v.

UCB, INC., et al.,

    Defendants.

_____/

**PLAINTIFFS' OPPOSITION TO UCB'S MOTION TO AMEND EXHIBIT LIST**

Pursuant to Federal Rules of Civil Procedure 16, 26, and 37, Southern District of Florida Local Rule 16.1(g), 35 U.S.C. §282(c), and Federal Rules of Evidence 402 and 403, Plaintiffs Apotex, Inc. and Apotex Corp. (collectively, "Apotex") submit this brief in opposition to Defendants' UCB, Inc. and Kremers Urban Pharmaceuticals, Inc. (collectively, "UCB") Motion to Amend Exhibit List (D.E. 143-3) ("Motion").

**I.   INTRODUCTION**

UCB seeks to add four exhibits ("the Exhibits") to its exhibit list weeks before trial. UCB has known of these Exhibits for at least six months, discovery has been closed for three months, and trial is imminent. In fact, two of the Exhibits are UCB's own German Patent Application[1] that was published in June 2000. *See* Exs. 1, 2.[2] UCB cannot plausibly contend that became aware of these Exhibits only three weeks before trial. However, UCB's July 3, 2013 Motion (D.E. 182) was the first time Apotex became aware of UCB's intention to rely on these Exhibits at trial for any purpose. Granting this Motion would both encourage UCB's "trial-by-ambush" tactics and unfairly

---

[1] The German Application is assigned to Schwarz Pharma AG on its face. However, UCB acquired Schwarz Pharma AG around December 2006. D.E. 143 at 15-16.

[2] To avoid unnecessarily duplicative filings, Apotex refers to Exhibits 1-4 filed with UCB's motion when possible. Exhibits A-C are filed concurrently herewith.

1

prejudice Apotex for UCB's unjustified lack of diligence.  *See Drilling Consultants, Inc. v. First Montauk Secs. Corp.*, No. 8:10-cv-2873-T-23EAJ, 2012 WL 4061227, *1 (M. D. Fla. Sept. 14, 2012) ("these tardy amendments both enable and reward the ambush and 'sneak attack' ….").

UCB's Motion is also a needless waste of the Court's (and Apotex's) time and resources. UCB's contention (D.E. 182 at 4) that the German Application indicates "that UCB (Schwarz) did not 'suppress or conceal' the process used to manufacture Univasc® …" is unsupported and untenable.  Even a cursory comparison of the actual Univasc® and Uniretic® processes with those in the German Application demonstrates that UCB's contention is baseless:

|  | **Univasc® or Uniretic® Processes** | **German Application Process** |
|---|---|---|
| Amount of moexipril used | 7.5 mg or 15 mg | 0.1 – 5 mg |
| Magnesium compound used in wet granulation | Magnesium Oxide | Magnesium Carbonate |
| Disease Treated | High Blood Pressure | Cerebrovascular Disorders |
| Person Who Developed the Process | Dr. Emschermann | Hugo Friehe, Ulrich Lang |

UCB's mischaracterization of the German Application is further belied by its own responses to Apotex's requests for admission and its 30(b)(6) witness testimony made earlier in this case.  In September 2012, **UCB admitted that it "takes measures to maintain the confidentiality of the manufacturing process for" Univasc® and Uniretic®**.  In October 2012, UCB's VP of Manufacturing, Mr. Siefert, confirmed that these processes were kept as confidential trade secrets and admitted that the **Univasc® and Uniretic® processes were not patented**.  UCB should not be allowed to amend its exhibit list based on its untimely and incorrect contentions that are directly contradicted by its own sworn admissions and testimony.

UCB's late disclosure unfairly surprised and prejudices Apotex.  In light of UCB's admissions made early on in this case, Apotex went through discovery and has prepared for trial believing the "suppression/concealment" issue was essentially uncontested.  UCB, on the other

2

hand, knew of its own German Application well before the case began. UCB had many opportunities to disclose its intention to rely on the German Application throughout this litigation, but chose to wait until now. UCB's delay is especially curious because the "suppression/concealment" issue has been at issue since the beginning of this case. *See, e.g.*, Apotex's 7/17/12 Opp. to UCB's Mot. to Dismiss (D.E. 33) at 5, 8-9, 10-11.

In fact, UCB had an affirmative duty to disclose its contentions regarding the German Application in response to Apotex's August 2012 interrogatories on invalidity and equitable issues. *See* Fed. R. Civ. P. 26(e). UCB also had a duty to disclose these Exhibits no later than June 28 (thirty days before trial) under both 35 U.S.C. §282(c) and Fed. R. Civ. P. 26(a)(3). Yet UCB flouted these duties and waited until well after discovery was closed to renege on its own sworn admission and testimony on July 3. Ten months after admitting it concealed its Univasc® and Uniretic® processes, UCB now contends the process was disclosed in the German Application. Two possible reasons for UCB's dilatory actions are (a) UCB knows that the German Application does not disclose its Univasc® or Uniretic® processes or (b) UCB is attempting to unfairly and prejudicially spring these Exhibits on Apotex. UCB's late disclosure of these Exhibits in the face of contradictory testimony and admissions raises questions of bad faith and gamesmanship.

UCB's Motion should be denied for at least five reasons: 1) UCB's disclosure is untimely under multiple Rules of Civil Procedure and 35 U.S.C. §282(c); 2) UCB does not have good cause for its Motion because it was neither diligent in notifying Apotex of its reliance on the Exhibits nor justified in its delay; 3) UCB suffers no "manifest injustice" because the Proposed Exhibits are inadmissible under, *inter alia*, Fed. R. Evid. 402 and/or 403; 4) Apotex would be unfairly prejudiced because, *inter alia*, it has to scramble to address these Exhibits and UCB's contentions without the benefits of discovery and expert testimony while also preparing for trial; and 5) the Court will be inconvenienced because it will not have any expert testimony on these highly

3

scientific Exhibits.  While any one of these reasons is grounds to deny UCB's Motion, denial is the only appropriate outcome when they are taken together.

## II.     ARGUMENT

The Court's scheduling order "is not a frivolous piece of paper, idly entered, which can be cavalierly disregarded" as UCB is doing here. *Klausmeyer v. Tyner Law Firm, P.A.,* No. 08-81286-CIV, 2009 WL 1833959, *2 (S.D. Fla. June 25, 2009) (quoting *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 610 (9th Cir. 1992)).   A judge in this Circuit has described motions to amend like UCB's motion as "**mischievous, disruptive**, and difficult to manage fairly" and "these tardy amendments both **enable and reward the ambush and 'sneak attack'** …." *Drilling Consultants*, 2012 WL 4061227 at *1.   In his view, "absent a demonstrable injustice (assuming due diligence and 'clean hands') …, the pre-trial stipulation and the pre-trial order govern." *Id.*  Apotex agrees.

Prior to the final pre-trial conference, scheduling orders may be modified only upon a showing of "good cause." Fed. R. Civ. P. 16(b); *Sosa v. Airprint Sys., Inc.*, 133 F.3d 1417, 1418 (11th Cir. 1998).   By contrast, the pretrial stipulation "will control the course of the trial, and may be … amended [after the Court has issued an order upon conclusion of the pretrial conference] only to prevent manifest injustice." L. R. 16.1(g); *see also* Fed. R. Civ. P. 16(e).  Manifest injustice is a "more stringent standard" than good cause.  *See* Fed. R. Civ. P. 16, Adv. Comm. Notes  to Subdivisions b, ¶ 16 & e, ¶ 35 (1983).  "[A]ll the circuits that have reached this issue agree that a trial court **may properly exclude evidence … not raised in a pretrial order** absent an abuse of discretion." *Gorlikowksi v. Tolbert*, 52 F.3d 1439, 1444 n.3 (7th Cir.1995) (citing, *inter alia*, *McGinnis v. Ingram Equip. Co.*, 918 F.2d 1491, 1494 (11th Cir. 1990)).  UCB's Motion should be denied because it cannot meet any of these standards.

**A. <u>UCB Failed to Comply with Many Federal Rules and the Patent Statute Requires Exclusion of the Exhibits Because UCB has Not Shown Its Delay was Justified or Harmless.</u>**

UCB's Motion should be denied because UCB's July 3rd disclosure violates 35 U.S.C. § 282(c)[3] and Fed. R. Civ. P. 26(a)(3), which both required UCB to disclose these Exhibits by June 28. UCB also violated Rule 26(e) by failing to timely supplement its interrogatory responses and expert reports to include these Exhibits. "The purpose of §282, like that of the Federal Rules, is to prevent unfair and prejudicial surprise …." *ATD Corp. v. Lydall, Inc.*, 159 F.3d 534, 551 (Fed. Cir. 1998).

a. <u>The Exhibits were Not Disclosed in UCB's §282 Notice.</u>

UCB did provide a §282 Notice to Apotex on March 22 listing all the patents and publications as well as people relevant to its anticipation and obviousness defenses. *See* Ex. A. But none of the four Exhibits were on UCB's §282 Notice, despite UCB having the German Application (Ex. 1) and the Sherman European Patent (Ex. 3), as well as knowing of the 2002 U.S. Patent Application (Ex. 4).[4] UCB explicitly contends the Exhibits "are relevant to UCB's anticipation and obviousness defenses." D.E. 182 at 2. But UCB's failure to include these Exhibits in its §282 Notice is fatal to its Motion because "**[i]n the absence of such notice proof of the said matters may not be made at the trial** except on such terms as the court requires." 35 U.S.C. § 282(c); *see*

---

[3] Under 35 U.S.C. §282(c), "the party asserting invalidity and noninfringement **shall** give notice in the pleadings or otherwise **in writing** to the adverse party **at least thirty days** before trial, … of any patent, … any publication to be relied upon as anticipation of the patent is suit or, … as showing the state of the art, and the name and address of any person who may be relied upon as the prior inventor or as having prior knowledge of or as having previously used or offered for sale the invention of the patent in suit. **In the absence of such notice proof of the said matters may not be made at the trial** except on such terms as the court requires." (emphasis added)

[4] While the English translation of the German Application (Ex. 2) is dated July 3, 2013, Apotex should not be the one who suffers for UCB's lack of diligence in getting a document it has had since 2002 translated. Also, UCB appears to have received the File History on July 2, 2013. Ex. 4 at 2. However, UCB knew this file history existed no later than January because Apotex produced a patent that resulted from it. UCB appears to have been less than diligent in seeking this publicly available document because it normally does not take six months for the PTO to provide file histories. UCB has not disclosed when it requested the File History from the USPTO.

*also Ferguson Beauregard/Logic Controls, div. of Dover v. Mega Sys., LLC*, 350 F.3d 1327, 1347 (Fed. Cir. 2003) (affirming preclusion of untimely prior art because this is simply "follow[ing] the letter of § 282 precisely."); *Thermo King Corp. v. White's Trucking Svc., Inc.*, 292 F.2d 668, 672-77 (5th Cir. 1961) (reversing district court's admission of previously undisclosed patents at trial because lack of disclosure violated § 282).

UCB argues that it should be allowed to disregard all of these rules because these Exhibits were allegedly "well-known to Apotex …." D.E. 182 at 7. However, another Judge in this district has rejected this argument. *See Flexiteek Americas, Inc. v. Plasteak, Inc.*, 641 F. Supp. 2d 1297, 1313 (S. D. Fla. 2009) (Defendants argue "that Plaintiffs did not suffer any prejudice because Plaintiffs were aware of such documents and in fact heir expert had reviewed them. The Court disagrees."). "**What counts is notice of intent to rely**. Therefore, as a general rule, merely mentioning a prior patent or publication in a pre-trial paper, and **neglecting to indicate that it will be used at trial does not normally constitute adequate notice**." *Id.* (emphasis added). Like in *Flexiteek*, "to allow Defendants to remain silent until the eve of trial as to (1) the specific prior art references they intended to rely upon, and (2) their reasoning as to why such references render the … patent invalid would provide Defendants with an unfair advantage." *Id.*; *see also Daiichi*, 2006 WL 2088310 at *3 (granting motion to exclude prior art disclosed on §282 notice because they were unsupported by witnesses or experts at trial or otherwise undisclosed in Apotex's expert reports). The only notice Apotex had of UCB's intent to rely on these Exhibits came on July 3, well after the close of discovery and outside the requirements of the §282 and Rule 26(a)(3) deadlines.

     b. <u>UCB Failed to Timely Supplement its Discovery under Rule 26(e).</u>

Section 282 only "sets a minimum period for identification .…" *ATD Corp.*, 159 F.3d at 551. The Court's scheduling order required earlier disclosures. *Id.* ("a specific judicial directive for the timing of discovery establishes the procedures to which the parties are bound."). Here, fact

6

discovery closed in February 2013 and UCB served its expert report on invalidity and equitable issues by February 4th and a "supplemental" report on February 11th. UCB knew about all of the Exhibits before these deadlines, yet it failed to disclose its intention to rely on them.[5]

Also, Apotex served interrogatories that specifically requested UCB's contentions and documents to be relied upon for its invalidity and equitable defenses in August 2012. *See* D.E. 90 at 8 and D.E. 90, Ex. A. UCB responded to these interrogatories in September 2012 and supplemented its responses twice between January and February 2013, never mentioning any of these Exhibits. *See, e.g.*, D.E. 90, Exs. B and O.[6] Again, none of these responses mention the Exhibits, despite UCB's duty to timely supplement its responses under Rule 26(e)(1). "**Rule 26(e) … prohibits parties who are aware of their deficient response from "hold[ing] back material items and disclos[ing] them at the last moment**." *Woods v. DeAngelo Marine Exhaust, Inc.*, 692 F.3d 1272, 1282 (Fed. Cir. 2012) (emphasis added). UCB did exactly that here.

    c. Rule 37(c)(1) Mandates Exclusion of the Exhibits in Light of UCB's Failures.

Rule 37(c)(1) "requires absolute compliance" with Rule 26(e) and "mandates that a trial court punish a party for discovery violations in connection with Rule 26 …." *U.S. v. Batchelor-Robjohns*, No. 03-20164-CIV, 2005 WL 1761429, *2 (S. D. Fla. June 3, 2005) (citations omitted). "[T]he sanction of **exclusion is automatic and mandatory** unless the sanctioned party can show that its violation … was either justified or harmless." *Managed Care Solutions, Inc. v. Essential Healthcare, Inc.*, No. 09-60351-CIV, 2010 WL 1837724 at *3 (S. D. Fla. May 3, 2010) (emphasis

---

[5] UCB also had a duty to disclose additions to its expert's opinions under Fed. R. Civ. P. 26(e)(2), but failed to do so.

[6] "The purpose of contention interrogatories is to narrow and define issues for trial beyond what may be ascertained from the parties' pleadings. ... The 'modern instruments of discovery' are thus a principal means by which **trials are rendered 'less a game of blindman's bluff and more a fair contest with the basic issues and facts disclosed to the fullest practicable extent.'**" *Daiichi Pharm. Co. v. Apotex, Inc.*, Civ. No. 03-937 (WGB), 2005 U.S. Dist. LEXIS 26059, *11-13 (D.N.J. Nov. 1, 2005) (emphasis added) (citations omitted).

added).  As discussed in detail below, UCB cannot meet its burden because, *inter alia*,  1) there is no reasonable justification for its failure to include documents it had for at least six months on their exhibit list or § 282 Notice or in their expert reports and discovery responses and 2) Apotex is prejudiced because (a) it relied on UCB's sworn admissions and testimony that UCB now contends are wrong based on the Exhibits to conduct discovery and (b) it had no opportunity to depose fact witnesses or prepare expert testimony on these Exhibits.  Thus, UCB's Motion should be denied under Rule 37(c)(1).[7]

### B. UCB Cannot Meet Rule 16(b)'s More Lenient "Good Cause" Standard Because It Was Not Diligent.

In the Eleventh Circuit, the "good cause" standard precludes modification unless the schedule could not "be met despite the diligence of the party seeking the extension." *Ameritox, Ltd. v. Aegis Services Corp.*, No. 07-80498-CIV, 2008 WL 2705435, *2 (S. D. Fla. July 9, 2008).   In other words, good cause exists when evidence supporting the proposed amendment was not discovered in the exercise of reasonable diligence until after the ordered deadline had passed. *Id.* (citation omitted).

Here, UCB did not even attempt to justify its late disclosure or establish its diligence.  Nor could it.  UCB had access to some of these exhibits before this litigation began (*e.g.*, its own German Application) and knew of all of the Exhibits no later than January 2013 when they were produced to UCB.  UCB's lack of diligence is fatal to its Motion—"**[i]f [a] party was not diligent, the [good cause] inquiry should end.**"  *Sosa.,* 133 F.3d at 1418 (emphasis added, citation omitted);

---

[7] UCB's late disclosure also violated the Court's scheduling order (D.E. 138) requiring disclosure of exhibits by April 19, 2013.  UCB (along with Apotex) requested this date and said that it "**allow[ed] the parties sufficient time** to finalize the joint pretrial stipulation so that it reflects the issues that remain to be determined by the Court." D.E. 136 at 2.  Yet UCB reneged on this agreement and has now decided it needs more exhibits to bolster its weak defenses, nearly three months after the Court-ordered deadline. UCB's disregard for this Court's order warrants application of Rule 16(f), especially in light of UCB's pattern of unjustified late disclosures throughout this litigation.  *See, e.g.*, D.E. 90; D.E. 146 at 16-17.

8

*see also Graf v. Morgan*, No. 11-0064-CG-N, 2012 WL 869004 (S. D. Ala. Mar. 13, 2012) (denying motion to amend exhibit list because party's "predicament is the result of their own failure to diligently pursue discovery in this case.").[8] Even if Apotex suffered no prejudice (which it did), UCB's Motion should be denied because good cause is not shown if the amendment could have been timely made. *Ameritox, Ltd.*, 2008 WL 2705435 at *2 (citation omitted).

### C. UCB Cannot Meet the More Stringent "Manifest Injustice" Standard Under Rule 16(e) Because the Exhibits are Inadmissible.

UCB's Motion also fails because there can be no "manifest injustice" under Rule 16(e) when the Exhibits have no relevance to any issue. *Cf. Gorlikowski*, 52 F.3d at 1445 (finding no manifest injustice when belated theory was "a bit farfetched."); *Abbott Labs. v. Torpharm, Inc.*, No. 97 C. 7515, 2003 WL 22462611, *3, n.3 (N. D. Ill. Oct. 29, 2003) (noting the exhibits "do not aid an analysis of whether the final product to be marketed by Torpharm will infringe," the disclosed ANDA "should be the focus of the inquiry at trial"). UCB's contentions of relevance are based on a clearly erroneous characterization of the German Application and bare attorney-argument that are not supported by expert testimony about the scientific disclosures of the 2002 patent application, which is not prior art and is cumulative of another document already on UCB's exhibit list.

      a. The German Application Is Not About Univasc® or Uniretic® Contrary to UCB's Contentions.

UCB's contends the German Application "indicates that UCB (Schwarz) did not 'suppress or conceal' the process used to manufacture Univasc® …." D.E. 182 at 4. UCB also states that it 'is probative of whether Schwarz publicly disclosed the relevant steps of the Univasc® process soon after it was approved for sale in the United States." *Id.* at 3. Also, UCB says "[t]he German Application is additional evidence that Sherman and Apotex did have information regarding UCB's

---

[8] Similarly, if UCB suffers any "manifest injustice" (which it does not as described below), it is due to its own failure to diligently develop its defenses. *See Morro v. City of Birmingham*, 117 F.3d 508, 516 (11th Cir. 1997) ("any injury resulting from our decision [affirming denial of motion to modify pretrial order] ... is a direct result of the defendant's failure to properly present its case").

9

'actual' process for Univasc®" because it was cited in a counterpart to the '556 patent. *Id.* at 5. All of these contentions rely on the assumption that the process in the German Application is the same as UCB's actual Univasc® process. A cursory glance at the German Application demonstrates that this assumption and thus UCB's contentions are wrong.

Univasc® tablets are made using 7.5 or 15 mg of moexipril as well as magnesium oxide, and are used for treating blood pressure. *See* Pre-Trial Stipulation (D.E. 143) at 1, 16 (¶¶ 14, 16, 19, 21). However, the German Application discloses tablets containing 0.1 to 5 mg of moexipril and magnesium carbonate, and are used for treating cerebrovascular disorders. For example, the first paragraph of the German Application states "[t]he invention relates to the use of moexipril **in an amount below the dosage resulting in a lowering of the blood pressure** for preparing pharmaceutical preparations for **treating cerebrovascular disorders**. Ex. 2 at 1 (emphasis added). The Applications also states "the dosages employed … are **markedly below the minimum dosage of 7.5 mg of moexipril** normally used for hypotensive treatment", specifically disclosing 0.1 to about 5 mg as the dosages of the invention. *Id.* at 3 (emphasis added). Further, Examples 1 and 2 are the only place wet granulation is mentioned in the Application. *Id.* at 5-6. However, both examples use small amounts of moexipril hydrochloride and **magnesium carbonate**, which is not used to make Univasc® or Uniretic®. *Id.*

Also, UCB's 30(b)(6) witness and VP of manufacturing, Mr. Siefert, testified that the Univasc® and Uniretic® processes were developed by a German scientist named Dr. Emschermann at Schwarz Pharma AG in Monheim, Germany. Ex. B, Siefert Dep. at 156:15-162:6; 186:25-187:16; 228:9-229:2. However, the German Application does not list Dr. Emschermann as an inventor, but names Hugo Friehe and Ulrich Lang. Ex. 2 at Title Page. During discovery, UCB never identified Friehe or Lang as having as inventors of the Univasc® or Uniretic® manufacturing process. In fact, UCB did not identify these two at all. UCB's witness testimony and discovery

10

practice confirms that this German Application has nothing to do with the Univasc® or Uniretic® process, despite UCB's untimely contentions to the contrary. Thus, UCB's relevancy arguments on its invalidity or equitable defenses are meritless.

### b. The German Application is Also Not Prior Art.

Even if the German Application was about Univasc®, it would be irrelevant because it is not prior art. First, the German Application is not prior art under 35 U.S.C. §§ 102(a) or (b). The priority date for the '556 patent is April 5, 2000, thus §102(a) prior art must have been publicly available before that date. *See* D.E. 143 at 17, ¶ 27. The §102(b) date for the '556 patent is even earlier, March 16, 2000. However, UCB admits the German Application was published on June 29, 2000, months after the §102(a) and (b) dates for the '556 patent. *See* D.E. 182 at 3.

Second, the German Application is irrelevant to UCB's alleged "prior invention" defense under 35 U.S.C. § 102(g)(2) because UCB has no such defense. Section 102(g)(2) requires prior invention by another "**in this country**." *Solvay S.A. v. Honeywell Int'l, Inc.,* 622 F.3d 1367, 1375-76 (Fed. Cir. 2010). There is no dispute that the methods for making Univasc® and Uniretic® were developed and reduced to practice **in Germany**, not the United States. Ex. B, Siefert Dep. at 156:15-162:6; 186:25-187:16; 228:9-229:2. It makes no difference that UCB ultimately transferred its manufacturing from Germany to the United States because, at most, the UCB in the U.S. simply reproduced the Univasc® or Uniretic® processes previously conceived of and reduced to practice by Schwarz Pharma scientists in Germany. *See Solvay*, 622 F.3d at 1378 ("Since it is undisputed that Honeywell did not originate the invention, but reproduced it in the United States by following [a Russian company's] instructions, Honeywell cannot … be an inventor for purposes of § 102(g)(2)."). In fact, Mr. Siefert said that UCB was not "trying to reinvent or invent a new process for the manufacturing of Univasc® and Uniretic®" when the process was moved from Germany to Indiana. Ex. B, Siefert Dep. at 186:25-187:16. In short, UCB's contentions about what the German

11

Application shows about UCB's suppression or concealment (*see, e.g.,* D.E. 182 at 4-5) is irrelevant because §102(g)(2) does not apply to the facts of this case.

      c. <u>The German Application is Not Relevant to Judicial Estoppel or Inequitable Conduct.</u>

UCB alleges that the European Patent Application (Ex. 3) shows that Dr. Sherman knew of the Schwarz German Application.  D.E. 182 at 3, 5.  Even if Dr. Sherman had knowledge of the German Application (which UCB has not shown), it is irrelevant because the German Application does not describe the actual Univasc® or Uniretic® process as described above.[9]  As such, it is irrelevant to any issue, including UCB's anticipation, obviousness, judicial estoppel, and inequitable conduct defenses.  To find otherwise would require crediting UCB's unabashed mischaracterizations of the German Application.  When the differences between the Univasc® process and the German Application are properly considered, it is clear that Apotex and Dr. Sherman were never aware of the actual process used to manufacture Univasc® prior to this litigation.  Thus, Apotex and Dr. Sherman did not make representations about Schwarz's secret Univasc® process in the '556 patent specification or file history.  Instead, they were describing what was disclosed by Schwarz in publicly available information (e.g. the monograph, the Orange Book, and the '450 patent), which told one of ordinary skill that Univasc® contained unreacted moexipril hydrochloride, not moexipril magnesium.  It was not until Apotex conducted testing in 2012, that it realized that UCB had been secretly using an infringing process.

      d. <u>The 2002 Patent Application File History is Cumulative and Not Prior Art.</u>

UCB admits that it has the PCT Publication (DTX-84) that claims priority to the 2002 Patent

---

[9] Ultimately, the European Patent Office allowed EP 1,142,878 (Ex. 3, the European equivalent of the '556 patent) to issue despite having initially cited to the German Application.  *See* Ex. C at AI-MOEX0008294.  Thus, it is immaterial to the patentability of the inventions in the '556 patent as well.  If UCB's Motion is granted, Apotex requests that it be allowed to add Exhibit C to its exhibit list as PTX-466.

Application (Ex. 4) on its exhibit list already. D.E. 182 at 3. If DTX-84 is admitted, UCB could make the same arguments it did in its Motion (D.E. 182 at 6) regarding the relevancy of the 2002 Patent Application because the disclosures are similar. *Compare* Ex. E, DTX-84 *with* Ex. 4 at 14-26. Thus, the 2002 Patent Application is cumulative. Furthermore, despite having the PCT Publication (Ex. E) since January, UCB never included it in its responses to Apotex's non-infringement, invalidity or unenforceability interrogatories or even its March 22nd §282 Notice. Nor was it considered or opined on by UCB's experts. UCB's prior inaction with the related PCT Publication (Ex. E) demonstrates the lack of relevance of both the PCT Publication and the 2002 Patent Application (Ex. 4) that UCB's attorneys now allege, without expert testimony, is somehow relevant to invalidity. But the 2002 Patent Application has nothing to do with invalidity because it is not prior art. The Patent Application was both filed and published well after the April 2000 priority date for the '556 patent. Therefore, it is not relevant to anticipation or obviousness.[10]

---

In sum, UCB can suffer no manifest injustice because the Exhibits are irrelevant. Thus, they do not "establish a critical element" of UCB's case. *United States v. Varner*, 13 F.3d 1503, 1508 (11th Cir. 1994). It makes little sense to add Exhibits to UCB's exhibit list that will ultimately be inadmissible, especially when they are likely to (a) cause confusion over what UCB's accused process actually is, (b) waste time and resources at trial presenting these Exhibits (and fighting over their relevance), and (c) mislead the jury into finding for UCB on erroneous grounds.

### D. Apotex is Prejudiced by this Motion and Would Be Even More So if It is Granted.

Allowing these exhibits at this late state of the litigation would be manifestly unjust to Apotex, not UCB. UCB's late disclosure is exactly the type of prejudicial and unfair surprise that

---

[10] UCB's citation to *Eldridge* (D.E. 182 at 6) is inapt because there 1) the motion to amend was unopposed, 2) the exhibits merely replaced others already on the list, and 3) it streamlined the case. 882 F. Supp. 356, 358 (S.D.N.Y. 1995). None of these factors are present here.

Section 282 and the Federal Rules were designed to avoid.

> a. Apotex's Reasonable Reliance on UCB's Sworn Admissions in Discovery and Trial Preparation Would Be Undone if the Motion is Granted.

UCB's concealment of its actual Uniretic® and Univasc® manufacturing processes has been at issue from Day 1 of this litigation. *See, e.g.,* Complaint (D.E. 1) at ¶¶ 18, 26 ("UCB's exact process is not publicly available"); Apotex's Opp. to UCB's Mot. to Dismiss (D.E. 33) at 5, 8-9, 10-11. In September 2012, UCB admitted that it "takes measures to maintain the confidentiality of the manufacturing process for" Univasc® and Uniretic®. Ex. D, UCB's Responses to RFA Nos. 5-8. In October 2012, UCB's VP of Manufacturing, Mr. Siefert, confirmed that these processes were kept as confidential trade secrets. Ex. B, Siefert Dep. at 329:21-331:14; 332:9-333:9. In fact, Mr. Siefert admitted that these processes **were not disclosed in any Patent Application** without hesitation. *Id.* at 331:9-14 ("Are you aware of Kremers' process being disclosed in any patent or patent application? … A: No, sir."). Apotex repeatedly relied on UCB's testimony and admissions throughout this litigation because they are critically damaging to UCB's anticipation, obviousness, disclaimer, judicial estoppel, and laches defenses. *See, e.g.,* D.E. 97 at 10, 29-30, 35.

In light of UCB's testimony and admissions, Apotex went through discovery (which closed three months ago) thinking the "suppression/concealment" issues was essentially uncontested. UCB, on the other hand, knew of its own German Application and had ample opportunities to disclose its reliance on this Application throughout the litigation.[11] In fact, UCB had a duty to do so under Rule 26(e) in response to Apotex's interrogatories. Yet UCB waited nearly 10 months to disclose the German Application. Discovery is closed, trial is imminent and Apotex is now forced to guess how UCB will use these exhibits at trial because UCB never told Apotex it was going to

---

[11] For example, UCB could have disclosed these Exhibits in (1) its Motion to Dismiss briefing, (2) its interrogatory responses, (3) its supplementary responses, (4) at any deposition, (5) in its expert reports, (6) its Answer, (7) its Amended Answer, (8) its summary judgment motion, (9) in opposition to Apotex's summary judgment motion, (10) its Notice of Prior Art under 35 U.S.C. § 282, (11) its Exhibit List, or (12) the Pretrial Stipulation.

rely on these Exhibits.

      b. <u>UCB's Late Disclosure Has Prevented Apotex from Taking Discovery on these Exhibits and UCB's Theories.</u>

Apotex has been denied fact and expert discovery on these highly scientific documents. But "it is the Plaintiffs' ability to engage in discovery on an asserted defense that is of utmost importance." *Thermos Co. v. Starbucks Corp.*, No. 96-C-3833, 1999 WL 203822, *7 (N. D. Ill. Apr. 6, 1999) (citations omitted). For instance, Apotex could have established through UCB's witness testimony or its own expert that the German Application does not disclose anything about UCB's Univasc® or Uniretic® process. "[F]undamental fairness dictates, at a minimum, that [UCB] be required to flesh out the contentions associated with this affirmative defense in sufficient detail to allow [Apotex] to conduct meaningful discovery …." *Cornell Research Found., Inc. v. Hewlett Packard Co.*, 223 F.R.D. 55, 67 (N.D.N.Y. 2003). Apotex "would indeed be prejudiced were it forced to meet th[ese] defense[s] without the benefit of fact discovery." *CIVIX-DDI, LLC, v. Hotels.com, L.P.*, No. 05-C-06869, 2011 WL 181342, *6 (N. D. Ill. Jan. 19, 2011) (striking supplemental interrogatory responses and evidence on invalidity served after close of fact discovery).

      c. <u>Apotex May Need Additional Discovery on the Exhibits Creating Unnecessary Financial and Time Burdens on Apotex and its Witnesses.</u>

If the Court grants UCB's motion, Apotex may need further discovery, such as depositions of these supposed "inventors" or additional expert reports on these Exhibits. Also, because UCB contends the Exhibits are relevant to inequitable conduct, Dr. Sherman, the inventor and Apotex's Chairman, could be deposed again.[12]

---

[12] UCB should be required to pay the reasonable attorney's fees and costs incurred by Apotex's fees and costs associated with addressing the evidence disclosed after the discovery deadline. *See* Fed. R. Civ. P. 16(f)(2); *see also Unique Indus., Inc. v. 965207 Alberta Ltd.*, 764 F. Supp. 2d 191, 205 (D.D.C. 2011) (sanctioning infringer for disclosing prior art after court-ordered discovery deadlines and lack of diligence).

15

At a minimum, "[t]his would certainly disrupt the parties' preparation for the impending trial, and would likely result in yet another request for an extension of the trial date …." *System Develop. Integration, LLC v. Comp. Scis. Corp.*, No. 09-CV-4008, 2012 WL 2953063, *3 (N. D. Ill. July 19, 2012).; *Woods*, 692 F.3d at 1283 ("[Patentee] MES would need to depose people and subpoena records to defend against testimony that these [allegedly prior art] drawings would elicit.").

Apotex has been prejudiced by the distraction of this motion practice and has had to spend time dealing with these new exhibits when they could be preparing for the July 29th trial. "[Apotex] should not be put in the position of having to scramble to … prepare rebuttal evidence or testimony, when it should be focusing its resources on preparing for trial." *Ty, Inc. v. Publications Int'l, Ltd.*, No. 99 C 5565, 2004 WL 421984, *4 (N. D. Ill. Feb. 17, 2004). Apotex now "will have to scramble to rebut [this new evidence and UCB's new theories]." *Eli Lilly & Co. v. Actavis Elizabeth LLC*, Civ. Action No. 07-3770 (DMC), 2010 WL 1849913, *9 (D.N.J. May 7, 2010) (citations omitted).

### E. The Court Will Be Inconvenienced Because the Court Will Have to Assess Complex, Scientific Exhibits without Expert Testimony.

All of these Exhibits and UCB's arguments about them are highly scientific that would seem to require supporting expert testimony. For example, UCB contends that Sherman's 2002 Application "provides evidence that stability of moexipril is due to the presence of the alkaline magnesium compound, as disclosed in the prior art, and that the prior art achieves the same stability in the same manner as the '556 patent." D.E. 182 at 6. Yet UCB's expert witnesses have not opined on any of these exhibits. Nor can they now.[13] Also, UCB's fact witnesses cannot testify on these topics under Fed. R. Evid. 701 because they had no knowledge of the Exhibits and did not file expert reports under Fed. R. Civ. P. 26(a)(2) that would allow them to provide expert opinions on

---

[13] Under Fed. R. Civ. P. 26(a)(2) and 37(c)(1), UCB's experts cannot opine on these exhibits now and should be precluded from doing so at trial. *See, e.g., Sensormatic Elecs. Corp. v. TAG Co. US, LLC*, 632 F. Supp. 2d 1147, 1168 (S. D. Fla. 2008).

16

these Exhibits.

"In a case of this complexity and without the guidance of expert testimony, the Court simply cannot assess the probity of these exhibits on its own." *Daiichi Pharm. Co. v. Apotex, Inc.*, Civ. No. 03-937 (WGB), 2006 WL 2088310, *2 (D.N.J. July 25, 2006) (excluding exhibits not disclosed in expert reports under Fed. R. Evid. 403 because "there is a substantial danger of unfair prejudice .. due to [patentee's] inability to rebut the evidence of alleged prior art in cross-examination or in direct examination of their own expert."). Also, "[i]n light of the technical and complex nature of the invention claimed by the … patent, prior art encompassing the same subject matter would be beyond the knowledge of jurors in the absence of expert opinion." *Marine Polymer Techs., Inc. v. Hemcon, Inc.*, Civ. No. 06-cv-100-JD, 2010 WL 1451203, *3 (D.N.H. Apr. 8, 2010) (finding prior art inadmissible to show invalidity "unless a qualified expert witness provides an opinion to explain the art and its relationship to the" patent in suit).

## III. CONCLUSION

For the reasons stated above, UCB's motion to amend the exhibit list should be denied because UCB's proposed amendment would result in substantial injury to Apotex, refusal will not result in injustice to UCB, and the inconvenience to the court is far from slight. *Sherman v. United States*, 462 F.2d 577, 579 (5th Cir. 1972).

Dated: July 20, 2013                    Respectfully submitted,

  /s/ Martin S. Masar III
Matthew S. Nelles
Fla. Bar. No. 009245
mnelles@broadandcassel.com
Broad and Cassel
One Financial Plaza
100 S.E. Third Avenue, Suite 2700
Fort Lauderdale, Florida  33394
Telephone: (954) 764–7060
Facsimile:  (954) 761–8135

KATTEN MUCHIN ROSENMAN LLP
Robert B. Breisblatt (Fla. Bar No. 145928)
robert.breisblatt@kattenlaw.com
Brian J. Sodikoff (admitted *pro hac vice*)
brian.sodikoff@kattenlaw.com
Martin S. Masar III (admitted *pro hac vice*)
martin.masar@kattenlaw.com
Elese E. Hanson (admitted *pro hac vice*)
elese.hanson@kattenlaw.com
525 W. Monroe Street
Chicago, Illinois  60607
Telephone: (312) 902-5200
Facsimile:  (312)-902-1061

*Attorneys for Plaintiffs Apotex, Inc. and Apotex Corp.*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that, on this 20th day of July 2013, I electronically filed the foregoing **PLAINTIFFS' OPPOSITION TO UCB'S MOTION TO AMEND EXHIBIT LIST** with exhibits using CM/ECF. I also certify the foregoing document is being served this day on all counsel of record on the attached service list via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

        /s/ Robert B. Breisblatt
    Robert B. Breisblatt

**SERVICE LIST**

Maria J. Beguiristain
White & Case LLP
Southeast Financial Center
200 South Biscayne Boulevard, Suite 4900
Miami, Florida  33131
Telephone: (305) 371-2700
Facsimile:  (305) 358-5744
mbeguiristain@whitecase.com

*Attorneys for Defendants*
*UCB, Inc. and Kremers*
*Urban Pharmaceuticals, Inc.*

Dimitrios T. Drivas (*pro hac vice*)
Adam Gahtan (*pro hac vice*)
Amit H. Thakore (*pro hac vice*)
White & Case LLP
1155 Avenue of the Americas
New York, New York  10036
Telephone: (212) 819-8200
Facsimile:  (212) 354-8113
ddrivas@whitecase.com
agahtan@whitecase.com
athakore@whitecase.com

*Attorneys for Defendants*
*UCB, Inc. and Kremers*
*Urban Pharmaceuticals, Inc.*